703 So.2d 745 (1997)
June Martin ZANCO
v.
Philip ZANCO, III.
No. 97-CA-342.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1997.
*746 Basile J. Uddo, S.C. Garcia, III, Metairie, for Plaintiff/Appellant.
S. Guy deLAUP, Metairie, for Defendant/Appellee.
Before GRISBAUM, CANNELLA and DALEY, JJ.
DALEY, Judge.
This is an appeal taken by the mother in a custody dispute in which the trial judge ordered that the 50/50 joint custody arrangement be continued. For the reasons assigned, we affirm the trial court's judgment.

FACTS
The parties, June and Philip Zanco, were married on August 20, 1976. Two children were born of that marriage, Heather in 1983 and Philip in 1991. The couple separated in February 1995, and entered into a consent judgment regarding custody on July 13, 1995. This consent judgment provided for joint custody of the children with actual shared physical custody on a 50/50 basis. A judgment of divorce was granted on September 25, 1995. On October 13, 1995, June Zanco filed a Rule to Show Cause Why the Consent Judgment for Visitation, Child Support and Alimony Should Not Be Modified. She alleged that the custody arrangement was detrimental to the children and has caused the children great emotional difficulty. Mr. Zanco responded with Exceptions of No Cause of Action, Prematurity, and Vagueness. The court denied the Exceptions of No Cause of Action and Prematurity, but granted the Exception of Vagueness. June Zanco was given thirty days to amend her rule to state her allegations more specifically. Her amended rule was filed on February 13, 1996 and the matter was set for hearing on the 7th day of March, 1996. On March 7, 1996, the court minutes reflect that a pending child support rule was satisfied and the custody rule was deferred pending court ordered evaluation. The court then appointed Dr. Wendelau Schwartz to conduct an evaluation in order to render a report to the Court relative to custody and visitation.
Following resolution of a number of discovery disputes and completion of the court ordered evaluation, the rule for custody was tried over a four day period and the trial court rendered judgment ordering the parties to "continue to share the physical custody of the minor children on a 50/50 basis, with each party having physical custody during alternating weeks." The judgment also allowed for alternating holidays between the parties, ordered that each party shall keep the other parent advised of any travel involving the children that lasts for more than one day and for dividing the child dependency exemptions on their tax returns.
During the presentation of June Zanco's case, Dr. Wendelau Schwartz testified as to her qualifications as a psychiatrist and her board certification in Child and Adolescent Psychiatry. She passed her state board and finished her fellowship in 1996. She has *747 been involved in approximately ten custody cases and this was her first time testifying in the Twenty-fourth Judicial District Court. Her report that was admitted into evidence recommended that June Zanco get physical custody and Mr. Zanco get visitations every other weekend, one weekday evening, and one half of vacation time. She testified that both parents in this case could meet all the needs of the children, but that the "routine was more predictable with June." Dr. Schwartz was not opposed to all 50/50 arrangements, but stated that it does not work in situations where there is a lot of conflict. She felt that there was a lot of conflict in this case because of the custody dispute. She felt that the current custody arrangement was harmful to the children, that Heather was functioning, but suffering, and that the arrangement was causing behavior problems in the five-year-old boy, Philip IV.
Testimony was then received from another psychiatrist, Dr. David Clark. Dr. Clark has been working in custody and child psychiatry for thirty-two years. He had interviewed only June Zanco and the children in early September 1995. Dr. Clark testified that 50/50 custody arrangements never work, stating that he researched custody arrangements and there is no support in the professional literature for the 50/50 split. He emphasized that it is an unstable arrangement. He also stated that he was not in a position to say which parent should have primary custody in this case. On cross examination, Dr. Clark admitted that the literature says the 50/50 can work under rare and ideal circumstances and that with less than a 50/50 arrangement, one parent and the child will lose out in some ways.
June Zanco testified that she was currently unemployed, but had previously been employed as an accountant for several years. She was not currently seeking employment and would only take a job which would allow her to work only during school hours. She explained that she was the primary caretaker of the children and that Mr. Zanco worked long hours, traveled excessively, and did not spend any time with her or the children during the marriage. On the day of the couple's separation, she left for a ten-day business trip and the children stayed with their father. After that, Mr. Zanco had the children sometimes, but when he began to have the children fifty percent of the time, Heather became depressed and Philip developed behavior problems at school. Heather did not like being away from her because Mr. Zanco was "always angry and fussing at her and her brother." When Mr. Zanco would come to pick up Philip, he would hide and throw things, then he would call her and "beg her to get him." She was adamant that the 50/50 arrangement did not actually go into effect until mid-September 1995. She complained that when Mr. Zanco has the children they are watched by Mr. Zanco's elderly father and numerous babysitters. As to her relationship with Jim Shea, whom she has since married, she denied having an affair with him during the marriage, although the overwhelming evidence was to the contrary. She did, however, admit to having an affair with another individual during the marriage. She stated that Mr. Shea did not have an alcohol problem, but he did have a DWI. Mr. Shea had been treated for depression at Greenbriar Hospital. Prior to the custody hearing she told Philip that she was going to court on custody and she was "going to win." She testified that she and Mr. Zanco were in agreement as to the school the children should attend, the type of medical care they should receive and their religious upbringing.
In support of his case, Mr. Zanco presented numerous witnesses. The first two witnesses were neighbors of Mr. Zanco who testified that Mr. Zanco had the children every other week since March 1995. This was corroborated by the testimony of the landlord.
Ms. Linda Garret testified that her daughter is on the gymnastics team with Heather and that Heather's father is actively involved with this pursuit, attending and helping at the meets. Mr. Zanco attended a meet in Shreveport one weekend when Mrs. Zanco had custody of Heather. Ms. Garret had never seen Philip cry to go with his mother on any occasion that Mr. Zanco had the child.
An usher at the church attended by Mr. Zanco testified that he saw Mr. Zanco take *748 the children to mass, but had never seen Mrs. Zanco take the children to that particular church.
Several of Mr. Zanco's co-workers testified as to Mr. Zanco's honesty, integrity and upstanding reputation in the community. They also testified that Mr. Zanco works a regular eight-hour work day and that he arrives at work later and leaves earlier on the weeks that he has the children. Mr. Zanco rarely works weekends and his travel is limited to one week to ten days per year. These witnesses also testified that Mr. Zanco's hours are flexible and that the needs of his family were a priority. They also testified that Mr. Zanco is a dedicated and loving father.
Testimony was received from Karen Shea, Jim Shea's ex-wife, who stated that she and Mr. Shea were married for twenty-eight years. As her marriage started to fall apart, her husband continued his affair with June Zanco. Jim Shea abused alcohol throughout the marriage, and there were numerous occasions where "Jim has disrupted parties, gotten into fights, come home drunk and abused me and the kids due to alcohol."
Mr. Shea's daughter, Joy Boudoin, testified that her father used alcohol repeatedly. Once he started to drink, he would not stop and would get aggressive and violent. He came home late three to four nights a week drunk. She would not let him drive her car or take care of her child because she felt he could not be trusted because of his drinking.
Mr. Zanco's former attorney testified that Mr. Zanco entered into an agreement with Mrs. Zanco wherein the divorce would be on the grounds of living separate and apart instead of adultery and Mrs. Zanco agreed to the shared custody of 50/50. Mrs. Zanco's attorney wanted to include language in the consent that would make it weaker and not a final resolution, but she and Mr. Zanco refused to do so.
Mr. Zanco's father, Philip Zanco, Jr., testified that he picks the children up from school and they arrive home at 3:30 p.m. Heather then goes into her room or the "office" to do homework while Philip plays. He admitted to having dozed off for a very short time while watching the children. There are also two older teenage girls who assist him in watching the children.
Mr. Zanco's sister, Donna Lebott, testified that she took her children on several outings with Mr. Zanco and his children, most recently, a Florida vacation. She corroborated her father's testimony that during the Zanco marriage, she and her father rarely saw the Zanco children.
Dean Sinceri, a marriage counselor, testified that he met the Zancos for counseling on a weekly basis for four to five months in late 1994. Mr. Zanco was very committed to the counseling process while Mrs. Zanco was not. He continues to see Mr. Zanco to help him deal with his grief over not having access to his children on a regular basis.
Philip Zanco, III took the stand and explained that he had always been a big part of his children's lives and felt it would be a tragedy for them to lose that degree of interaction with him. He explained that the children have everything they need at his home, so there is no need for the children to carry things back and forth. Mr. Zanco did not want the marriage to end and has shared the children 50/50 since the separation. There are no disagreements regarding schools, medical care, or religious upbringing between him and June Zanco. He fears that since June is not close to her family that if he had the children less that 50/50 that she will distance him from the children. Every time June complained as to something he was doing with the children, he tried to remedy her complaintswhen she complained about the children being in after care, he got his father to pick them up from school. When she complained about his father dozing off and being too old to watch the children, he hired qualified babysitters. He denied that the children ever missed their extracurricular activities when they were with him. Neither of the children has ever told him they did not like the 50/50 arrangement. Mr. Zanco lives very close to the children's school. They leave for school about 7:45 a.m. and he gets home from work about 4:30 p.m. He has four weeks of vacation per year and travels only seven to ten days per year. Mr. Zanco is concerned about the effect June's relationship with Jim Shea will have on the *749 children. On at least one occasion, Mr. Zanco smelled alcohol on Mr. Shea's breath at Philip's T-ball practice.
Patricia Percy was accepted as an expert in child services, social work and custody evaluations. She has also done work in substance abuse evaluation. She evaluated Jim Shea. It was her opinion that Mr. Shea used alcohol for stress release. Her recommendation was that he monitor his emotional state and guard against using alcohol for stress release. She does not consider him to be a threat to the children with regard to alcohol. As long as he refrained from drinking, she felt it was acceptable for Mr. Shea to drive the children places. On cross-exam she admitted that she could not "guarantee that Mr. Shea would not drink when he is with the children."
Finally, testimony was received from Karen VanBeyer, a board certified social worker, with more than twenty years experience in custody disputes. Ms. VanBeyer explained that she disagreed with Dr. Schwartz' recommendation because she did not perform a thorough evaluation. Dr. Schwartz should have interviewed Mr. Shea, Philip Zanco, Jr., and the babysitter who worked for the Zancos from 1988 until 1994. Additionally, she should have interviewed five year old Philip alone. Ms. VanBeyer disagreed that Philip's behavior problems were caused by the 50/50 arrangement. Rather, she testified the divorce itself had caused his problems. She stressed that equal access to both parents is in the children's best interest and that children do better with large chunks of time rather than frequent exchanges. It was Ms. VanBeyer's opinion that the children have done well under the 50/50 arrangement. She did not feel there was a lot of conflict between the Zancos presently and felt that they were capable of not having any conflict. Ms. VanBeyer did not make a recommendation specifically about what should be done in this case because she had not interviewed the parties.
Thirteen year old Heather Zanco gave testimony in Judge Rothschild's chambers. Heather stated that she did not have to help with her little brother when she was at her dad's house. She goes to bed at about 10:00 or 11:00 p.m. at her dad's house and 9:30 or 10:00 p.m. at her mom's house. Philip goes to bed at 8:30 p.m. at both houses. Her father helps her with her homework and picks up her friends to visit her at his house. Her father gets home about 4:30 p.m. on days that she has dancing and 4:45 p.m. on the days she does not have dancing. Heather Zanco testified that she had never seen Mr. Shea drink, that she liked him and that he was nice to her mom. She would like to spend more time with her mom because "I'm a girl and she's the mom."
The trial court ordered that the parties "continue to share the physical custody of the minor children on a 50/50 basis, with each party having physical custody during alternating weeks." The judgment provided for alternating holidays, birthdays, and vacation. It was ordered that the parties keep each other advised of the address and telephone numbers when the children are taken out of the New Orleans area for more than one day. The parties were ordered to divide the child dependency exemptions, with June Zanco taking the exemption for Heather and Mr. Zanco taking the exemption for Philip. Once Heather can no longer be claimed, the parties are to alternate claiming Philip.

ANALYSIS
On appeal, June Zanco argues that the trial court erred in concluding that the existing joint custody arrangement was in the best interest of the minor children. This argument is supported by her claim that "the record is devoid of support for the trial court's judgment." Appellant contends that since, there was no expert testimony in support of the 50/50 arrangement, that it is not in the best interest of the children.
It has been the long established rule that the "best interest of the child" determination is within the exclusive province of the trial court. W.M.E. v. E.J.E., 619 So.2d 707, 711 (La.App. 3rd Cir.1993). On appellate review, a trial court's determination of child custody is entitled to great weight and will not be disturbed unless the trial court clearly abused its discretion. Robert v. Gaudet, 96-2506 (La.App.St.Cir. 3/27/97), 691 So.2d 780; *750 Powell v. Powell, 28-911 (La.App. 2nd Cir. 12/11/96), 684 So.2d 1084.
In W.M.E., supra at 711, the court held:... the ultimate `best interest of the child' decision squarely remains in the exclusive province of the court. This decision necessarily focuses on all of the evidence and testimony presented. The trial court is not bound to follow the recommendations of an expert witness.
This Court previously has relied on Goodwin v. Goodwin, 618 So.2d 579, 586 (La.App. 2nd Cir.1993) in holding:
After weighing and evaluating medical and lay testimony, the trial court may accept or reject the opinion expressed by any medical expert. The weight which is to be given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. The trial judge also has the discretion to substitute his common sense and judgment when such a substitution appears warranted upon the record as a whole.
Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision which is in the best interest of the children. Remson v. Remson, 95-1951 (La.App.St.Cir. 4/4/96), 672 So.2d 409. The best interest of the child, however, must be balanced with a parent's right to equally share the physical custody of the child where feasible. Id.
In this case, Judge Rothschild heard four days of testimony from numerous witnesses as to the relationship between the children and their father and the adjustment of the children to the 50/50 arrangement. The vast majority of the lay testimony indicated that the 50/50 arrangement is in the best interest of the Zanco children. School records admitted into evidence indicate that the children are doing well in school. Ms. VanBeyer also pointed out that the children have done well under the present arrangement and stressed that a 50/50 arrangement is in the best interest of the children in terms of their attachment and maintaining a healthy relationship with both parents.
We disagree with the appellant's contention that expert opinions are controlling, and find that the jurisprudence supports the trial judge's decision to weigh all of the testimony in rendering his judgment. Additionally, we find that the trial court's judgment is supported by evidence in the record. This case presents the appellate court with two highly educated professional parents who during their marriage shared parenting responsibilities. Both parents agreed initially to share equally their parenting obligation by a joint custody agreement with a 50/50 custodial plan. The record suggests that Mrs. Zanco did not allow for a sufficient adjustment period before seeking modification. The Court is aware of very few divorce driven custodial plans which do not create emotional problems for the children of the marriage. Now, over two years after the custodial arrangement has been operational, appellant wants this court to reverse the judgment of the trial court. Appellant's experts advocate for the traditional model of custodial arrangements whereby the mother has primary custody, and the father has visitation on alternate weekends. While this traditional model may minimize exchanges, it also minimizes joint participation in child rearing.
A party attempting to modify a "considered decree" in a custody case bears the heavy burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193. In a case such as the one before us, the custody judgment was not a "considered decree," rather, it was entered into by the consent of the parties. Accordingly, the "heavy burden" rule is not applicable, but the moving party must still prove a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child. Bergeron, supra; Haik v. Haik, 94-563, (La. App. 5th Cir. 12/14/94), 648 So.2d 1015.
*751 Given this record we cannot say the trial judge committed reversible error when he found that "the 50/50 custody arrangement has been working and there was no showing that this arrangement was not in the children's best interest." This court cannot ignore the fact that the 50/50 joint custody arrangement has been in effect for over two years and the children and parents have developed patterns of conduct that would be seriously disrupted if a major change in the custody arrangement were ordered. Rather, this court suggests that both parents cooperate with each other in sharing parenting responsibility. Mutual cooperation and a little give and take is essential to joint custodial harmony. While June Zanco and Philip Zanco have conflicts, the record suggest that their love for their children can and should override these conflicts.
Accordingly, we affirm the trial court's judgment to "continue to share the physical custody of the minor children on a fifty-fifty basis, with each party having physical custody during alternating weeks."
In her second assignment of error, June Zanco argues that the trial court erred in including the provisions in the judgment regarding travel notification to the other parent and tax exemptions. Appellee contends that these provisions were contained in the judgment submitted to the court by appellee at the beginning of trial; therefore, they were placed at issue.
We find that the provision to keep the other parent informed of travel plans is commonly included in custody orders. A parent has a right to know where his or her children are.
As to the second provision, the sharing of the exemptions is consistent with equal sharing of custody and is expressly permitted by La. R.S. 9:337(B), which provides:
The decree or implementation order may also allocate to either parent any dependency exemption granted to a parent by provisions of any revenue law; and if that allocation is not maintained by the taxing authorities, then the parent who receives the benefit of the exemption for such tax year shall not be considered as having received payment of a thing not due.
Accordingly, we find this assignment of error has no merit.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.