|,CANNELLA, Judge.
Defendant, Charles Kinler, the natural father of Brandy Faith Kinler (Brandy), the subject of this custody battle, appeals from the trial court ruling in favor of intervenors, Daniel and Brenda Parker, which denied defendant’s motion to change custody by terminating joint custody. We affirm.
Brandy was born on June 14, 1992 to defendant and his wife, Beverly Kinler. Sometime thereafter, the parties separated. Brandy, as well as her 3 sisters, remained with defendant. In early 1994, the children were placed in the care of the Office of Community Services in St. John Parish (OCS).[1] Brandy |3was placed in foster care with Daniel and Brenda Parker, intervenors herein. Brandy remained with the Parkers from February of 1994 until mid-March of 1995, when she was reunited with her natural mother, who had divorced Brandy’s father and who was then married to Ed Breechen. Beverly Breechen was given custody of the 4 children in April of 1995. Shortly after being reunited with her natural mother, Brandy began weekend visits with the Parkers. In May of 1995, Beverly Breechen allowed the Parkers to take Brandy for the summer. In September of 1995, the Parkers relocated to Pace, Florida. At that time Beverly Breechen signed an affidavit giving the Parkers guardianship and physical custody of Brandy. Brandy had visits with her mother in Louisiana which the Parkers initiated.
In late January or early February of 1996, following a visit to her natural mother, Brandy made a comment to her pediatrician that made him suspicious of possible sexual abuse. It was reported to Florida family services which commenced an investigation and eventually contacted OCS in Louisiana. In late February of 1996, the Parkers received a telephone call from Brandy’s natural father and mother, who stated that they were in Florida and wanted to come and get her. They were informed that Brandy was not there, but was visiting relatives in Louisiana. They declined an offer to come to the Parker home and discuss the matter.
On March 12, 1996, by affidavit, Beverly Breechen revoked the Parkers’ physical custody and guardianship of Brandy. On March 15, 1996 defendant filed a Rule for *269 Contempt, Temporary Restraining Order and Ex-Parte Order requesting immediate custody of his 4 children, including Brandy. On April 18, U1996, the Parkers filed an Ex-Parte Motion for Temporary Modification of Child Custody Order and Rule for Change of Physical Custody as to Brandy. Following a hearing on April 2, 1996, at which Beverly Breechen did not appear, the district court rendered judgment on April 16, 1996 granting defendant permanent sole custody of his 3 oldest daughters and joint custody with the Par-kers of Brandy, with the Parkers named as the custodial parties. No appeal was taken from that judgment.
On August 2, 1996, defendant filed a Rule To Show Cause why he should not be awarded sole custody of Brandy. Following a hearing, judgment was rendered on September 24, 1996 continuing the joint custody, with the Parkers named as the custodial parties and a visitation plan with the express purpose of assimilating Brandy back with her father. Over the next 9 months, a status conference was conducted and minor amendments were made to the judgment concerning visitation.
On May 22, 1997, defendant filed a Motion to Modify Custody. Following a hearing on that motion, judgment was rendered on July 29, 1997 continuing the joint custody of Brandy by defendant and the Parkers, but this time defendant was named as the custodial parent with visitation rights granted to the Parkers. No appeal was taken from this judgment. After review in November, 21, 1997, judgment was rendered on January 15, 1998 continuing the terms of the July 29, 1997 judgment.
On May 20, 1998, the Parkers filed a motion to change custody. On July 14, 1998, defendant filed a Motion to Terminate Joint Custody. Following a hearing, the trial court issued a judgment on September 4, 1998, maintaining joint custody, with defendant as the custodial parent, effectively denying the Rmotions by both parties. The judgment also set out a detailed visitation provision. It is from this judgment that defendant appeals.
On appeal defendant assigns two errors in which he argues that the trial court erred in applying the wrong standard in a contest over custody between a parent and a non-parent in its decision awarding joint custody.
In our review of the matter, we find, at the outset, that defendant’s view of the status of the case is incorrect. The judgment awarding joint custody to defendant and the Parkers was originally rendered on April 16, 1996 and, having not been appealed, is a final judgment. The issue before this court at this juncture of the case is not whether the trial court should award joint custody, but rather, whether the trial court should change the joint custody determination. Appellants arguments on the standard applicable to awarding joint custody are not applicable to the question presented at this point in the case, whether the court erred in denying defendant’s motion to change custody.[2]
It is well settled that the party seeking a change of custody bears a heavy burden of proving that the continuation of the custody is so deleterious to the child as to justify modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change is substantially outweighed by the advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Zanco v. Zanco, 97-342 (La.App. 5th Cir. 11/12/97), 703 So.2d 745. See also. La. C.C. art. 131, Revision Comments — 1993, (d). On appellate review, a trial court’s determination of child custody is entitled to great weight and will not be disturbed unless the trial court clearly abused its discretion. Zanco v. Zanco, supra;
*270 | fiIn reviewing the record before us, it is clear that defendant has not met the burden of proof necessary to warrant a change of the custody arrangement previously set out in this case. There is no showing that the continuation of the current custody arrangement is deleterious to Brandy or that the harm caused by the change is outweighed by any advantages. In fact, the contrary is apparent.
Brandy lived with the Parkers for about 3 years, from the spring of 1994 through the spring of 1997, with defendant obtaining joint custody and visitation rights in the spring of 1996. Prior to that, Brandy had not seen her father for about 3 years. The Parkers were virtually the only family which Brandy knew during these formative years. The counselor testified that the Parkers are Brandy’s emotional family. Weighed against that, the trial judge has taken steps to assimilate Brandy back into her natural father’s life along with her 3 sisters. He provided for the detrimental effect on Brandy of abruptly cutting her off from the Parkers and placing her with a virtual stranger, although defendant is her natural father.
We find that the trial judge in this case has correctly taken into account the best interests of Brandy. In reasons issued with the July 29, 1997 judgment, continuing the joint custody but changing the domiciliary parent to defendant, the trial court noted that there was “no right more sacred than the right of a natural parent to raise his or her children.” However, the trial court went on to find:
Clearly Brandy Faith Kinler has two families. I am of the opinion that it is crucial to Brandy’s continued development and growth in a healthy manner that her relationships with both families be nurtured and encouraged by all members of both families.
Review of the record clearly evidences the trial court’s concern for the rights of the natural parent, weighed against the best interests of the child, in 17assimilating her back into her father’s family. The rulings have consistently increased defendant’s time with Brandy in a most difficult situation for all parties.
Nevertheless, the record evidences the deep emotional attachment that Brandy has to the Parkers, the only family which she has really known. The Parkers have 2 other children whom Brandy considers her siblings. Brandy, keeping in mind her young age, expresses a desire to live with the Parkers. The Parkers took good care of Brandy and the evidence indicates that she was happy, healthy and well cared for while with the Parkers. The counselor testified that it would be difficult for Brandy to have all contact with the Parkers terminated. Defendant has simply not met his burden of proving that the disadvantages of terminating joint custody with the Parkers is outweighed by the advantages.
In the latest ruling, the trial court denied defendant’s motion to change custody, in which he sought sole custody. Under all of the circumstances of this case, we find no error in that ruling at this time.
Accordingly, for the reasons stated above, the judgment of the trial court, denying defendant’s motion to change custody is affirmed.
AFFIRMED.

. There are exhibits in the record that indicate that Beverly Kinler left the family home and left the children with defendant. At some point OCS received a report of alleged child neglect. It was discovered that the 4 children were living in a trailer with their father. The trailer was dirty and in disarray. There was no source of heat and the trailer had holes in the ceiling and floor. The 7 year old child told OCS that her father hit Brandy with his hand and often left them alone at night. The official findings by OCS regarding these complaints are not part of our record and are not at issue in this appeal.

. The Parkers have neither appealed nor answered the appeal. Therefore, we do not consider the part of the judgment that was adverse to them.