960 So.2d 285 (2007)
Robin S. SCHOUEST.
v.
Todd J. SCHOUEST.
No. 06-CA-972.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 2007.
*286 Frank P. Tranchina, Ronald S. Hagan, Attorneys at Law, Metairie, Louisiana, for Plaintiff/Appellant.
Roland A. Ditta, Attorney at Law, Gretna, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
In this child custody dispute, the plaintiff/appellant seeks to have the judgment of the trial court overturned as it pertains to the designation of the defendant/appellee as domiciliary parent. For the reasons that follow, we affirm.
Prior to their divorce on January 25, 2002, the appellant, Robin Schouest ("Ms. Schouest"), and the appellee, Todd Schouest ("Mr. Schouest"), entered into a consent judgment regarding custody of their three minor children. The June 5, 2001 consent judgment provided that Mr. Schouest would pay child support to Ms. Schouest, detailed a schedule of visitation, and awarded the use and occupancy of the family residence in Gretna to Ms. Schouest.
On December 10, 2001, Mr. Schouest filed a Motion to Decrease Child Support, To Modify Child Custody and Visitation and For Contempt. The disposition of that matter does not appear in the record before us.[1] On March 5, 2003, the parties entered into an arrangement in writing whereby the children would reside with Mr. Schouest for an extended period of time.[2]
On January 15, 2004, Mr. Schouest filed a Motion to Re-Set Motion and to Modify Custody and Visitation and Support. Mr. Schouest alleged in his motion that he had been the primary custodial parent of the minor children since March 5, 2003 on the Westbank of Jefferson Parish, where the children lived and attended school. Mr. Schouest asserted that Ms. Schouest's recent move to the Eastbank of Jefferson Parish did not make it feasible for the children to reside with her for various reasons. Mr. Schouest also requested that *287 the court appoint a mental health professional to help determine the best interests of the children and that the court award him child support. Mr. Schouest also sought use and occupancy of the former family home pending a community property partition.
Trial on the matter was held intermittently from between March 21, 2005 and February 10, 2006.[3] On June 30, 2006, the trial court awarded Mr. Schouest domiciliary custody of the Schouests' minor children and ordered that the Schouests continue their joint custody visitation rights. Ms. Schouest timely filed the present appeal.

LAW AND ARGUMENT
On appeal, Ms. Schouest raises three assignments of error: (1) The trial court committed legal error in finding that a material change of circumstances occurred between the initial consent judgment and the date of the hearing; (2) The trial court erred by failing to make a determination that the change of custody was in the best interest of the minor children and in failing to consider factors contained in LSA-C.C. art. 134; and (3) The trial court erred in awarding Mr. Schouest domiciliary custody of the minor children.
In regard to child custody matters, Louisiana appellate courts have articulated a standard of review which holds that
The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion. . . . [4]
In every custody case, the primary concern is the best interest of the child. Each case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the child.[5]
Louisiana Civil Code Article 134 provides a number of factors to be considered in making the best interest determination. These factors are merely suggested factors, and the trial court is free to use other factors to make its determination.[6] However, the trial court should consider the totality of the facts and circumstances in its analysis of the best interest of the child.
When the custody order is by consent of the parties, as in this case, and not a considered judgment made by the trial judge, the party seeking the change must show a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child.[7]
In his Motion to Re-Set Motion and to Modify Custody and Visitation and Support, Mr. Schouest detailed his arguments in favor of finding a change in material circumstances, namely, that he had been the primary custodial parent of the minor children since March 5, 2003 by mutual consent of the parties. Mr. Schouest also asserted that Ms. Schouest had relocated to Metairie, Louisiana, and that it would *288 be impractical for the children to attend their Westbank schools if they reside with Ms. Schouest.
The trial court did not articulate Reasons for Judgment in its determination of custody, but found "there has been a material change in the conditions of the children. The father has the better disposition, not just the capacity, but the disposition to provide safety and security for the minor children."
The extensive record in this case contains accusations by both parties regarding the moral fitness and character of each as both individual persons and as parents. There was also impeachment evidence offered to cast doubt upon the veracity of both the plaintiff/appellant and defendant/appellee throughout the proceedings below. We do not find it necessary to recount those allegations and the supporting evidence presented by the parties. However, this Court has conducted a de novo review of the record before us and, based upon our review of the record, we find that the trial court's judgment is supported.
First and foremost, we acknowledge that Ms. Schouest's move to Metairie from the Westbank of Jefferson Parish, in and of itself, does not constitute a change in material circumstances sufficient to change her status as domiciliary parent.[8] However, under the facts of this case, we cannot say that the trial court was manifestly erroneous in finding that the February 13, 2003 agreement between the parties under which the children lived with Mr. Schouest over a significant period of time did, in fact, constitute a requisite change in material circumstances which justified naming Mr. Schouest as domiciliary parent.
Having satisfied this legal requirement, we next address the issue of whether Mr. Schouest demonstrated that the change of domiciliary status was in his children's best interest.
Each of the Schouest children testified during the proceedings.
J.S., twelve years old in the eighth grade, testified that both of his parents provided him with meals, a place to sleep, homework assistance, and medical care. He further indicated that there was a difference in how the two parents treated him. From a disciplinary standpoint, whereas Mr. Schouest never physically disciplined him, J.S. said that Ms. Schouest has on occasion slapped him in the face. He also indicated that Ms. Schouest would "cut him off" or not communicate with him for days on end when he had upset her. J.S. testified that Ms. Schouest called him profane names fairly often. J.S. said that, when he lived with his father, for about a year he did not have any overnight visits with his mother and that she would only visit during the day, if at all. J.S. told the court evaluator that he feared his mother, and he expressed to the court that he wished for the court to order all parties not to discuss his testimony with his mother because of his belief that Ms. Schouest would retaliate against him. J.S. expressed a preference for living with his father.
R.S. was ten years old at the time of his testimony. At the beginning of his testimony, he expressed his preference for living with Mr. Schouest. R.S. indicated that both parents help him with homework. He also said that Mr. Schouest provides home-cooked meals. R.S. recounted that his mother had physically disciplined him and his brother in the past by doing things like pulling hair or pulling on his ear. He *289 said that his parents take him to the doctor on an approximately even basis.
A.S. was nine years old at the time of her testimony. Early in her testimony, she expressed a preference for living with her father. A.S. stated that she has her own place to sleep at Mr. Schouest's residence. A.S. testified that she would be upset if she were forced to live with Ms. Schouest because she does not get along with her step-father's daughter. A.S. testified that she had witnessed her step-father hit her step-sister on the arm or on the leg but that he had never hit her.
The parties stipulated, eight months after the children first testified, that each would once again provide a preference for living with their father in accordance with Dr. Steven York's report.
While we have already affirmed the trial court's finding that a material change in circumstances existed sufficient to change the status of the domiciliary parent, we note that, in some cases, our state courts have held that the stated preference of a child to live with one parent over the other can also constitute a material change in circumstances.[9]
Dr. Steven York ("Dr. York"), a psychologist, was appointed by the court on February 5, 2004 to conduct a custody evaluation of the Schouests and testified at trial as to his findings. In the course of this evaluation, Dr. York met with both Mr. and Ms. Schouest, as well as the three Schouest children. Dr. York also met with Ms. Schouest's current spouse and a social worker who had worked with the family.
At the time of his report, Dr. York's recommendation was that the Schouests maintain a joint custody arrangement but that Mr. Schouest be appointed the domiciliary parent. Part of this conclusion was based upon Dr. York's opinion that the children should be kept in their current Westbank schools in order to maintain stability in their lives. Dr. York also testified that his recommendation was based, in part, upon Mr. Schouest's assertion that he was responsible for bringing the children to their doctor visits. Dr. York further recommended that Mr. Schouest be designated domiciliary parent based upon his attempts to provide a stable environment to the children.
Dr. York's report, in relevant part, reads:
The children should remain at Christ the King School until the appropriate age for them to change. Robin [Schouest] made a choice to move away from this school area, and it is, therefore, her responsibility to get them to this school, rather than introduce a new change, which would seriously impact the children's lives unnecessarily to avoid a 30-minute commute.
. . . .
The parents should be granted joint custody, but Todd should be designated domiciliary parent.
. . . .
The children should continue on approximately 50/50 time schedule with each parent.
Ms. Schouest attacks Dr. York's conclusions based upon the assertion that Mr. Schouest was not forthcoming or truthful during the evaluation. Ms. Schouest presented evidence and testimony in support of her argument at trial. On appeal, however, we are required to extend great weight to the factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences *290 of fact.[10] Based upon our review of the record, we do not find the trial court's apparent rejection of Ms. Schouest's claim, that Mr. Schouest misled Dr. York, is a clear abuse of discretion.
Further, based on our review of the record, and in particular the testimony and evidence recounted above, we cannot say that the trial court clearly abused its discretion in finding that the change of domiciliary status was in the Schouest children's best interest.
Ms. Schouest further argues on appeal that the trial court erred in not addressing in its judgment the factors under LSA-C.C. art. 134. As previously stated, however, these factors are merely suggested factors, and the trial court is free to use other factors to make its determination. In our review of the record, we note that evidence was presented to the court on a significant number of Article 134 considerations. In its judgment, the trial court stated that Mr. Schouest's designation as domiciliary parent was based on what it felt to be for the "safety and security" of the children. Based upon our review of the record, we find that, contrary to the assertions of Ms. Schouest, the court apparently took Article 134 factors into account in designating Mr. Schouest as the domiciliary parent. We do not find the trial court's omission of a detailed discussion of these factors in its judgment to be manifest error.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] It does appear from other portions of the record, however, that the Schouests shared joint custody of the minor children with Ms. Schouest serving as the domiciliary parent.
[2] Ms. Schouest introduced the March 5, 2003 agreement into evidence. At trial, Mr. Schouest testified that Ms. Schouest had altered and added handwritten changes to the document without his knowledge or consent after he had signed it.
[3] The proceedings were delayed and rescheduled due to Hurricanes Ivan and Katrina.
[4] Hawthorne v. Hawthorne, 96-89, p. 12 (La. App. 3 Cir. 5/22/96); 676 So.2d 619, 625, writ denied, 96-1650 (La.10/25/96), 681 So.2d 365 (citations omitted).
[5] Zanco v. Zanco, 97-342 (La.App. 5 Cir. 11/12/97), 703 So.2d 745.
[6] Aucoin v. Aucoin, 02-756 (La.App. 3 Cir. 12/30/02), 834 So.2d 1245.
[7] Plaisance v. Dep't of Soc. Serv., 00-1038 (La.App. 5 Cir 12/27/00), 777 So.2d 630.
[8] Anderson v. Anderson, 01-53 (La.App. 5 Cir. 5/30/01), 788 So.2d 676.
[9] Wages v. Wages, 39,819 (La.App. 2 Cir. 3/24/05), 899 So.2d 662.
[10] Rosell v. ESCO, 549 So.2d 840 (La.1989).