MARION F. EDWARDS, Chief Judge.
|2The present appeal is taken from a judgment granting custody of the minor child, Karoline Becnel, to her mother, the plaintiff/appellee, Michelle Hazard Rooney (“Rooney”), and granting visitation to her father, the defendant/appellant, David Joseph Becnel (“Becnel”).
The history of this contentious proceeding is as follows: Karoline Becnel was born on August 21, 2001 to Rooney, who, in December 2001, filed a Petition to Establish Paternity, Legal Custody, Child Support, and for Injunctive Relief against Becnel. In the petition, Rooney alleged that Becnel’s heavy use of prescription pain medication warranted that sole custody be granted to her. In addition to her request for child support, Rooney urged that Becnel had engaged in a series of harassing and threatening telephone calls, both at home as well as at her place of employment, and she prayed that an injunction be issued against him.
In answering the petition, Becnel confessed paternity, averring that he and Rooney had never married. He denied all other allegations of the petition and requested sole custody of Karoline. In his reeonventional demand, Becnel averred that Karoline was in danger with her babysitter, who was on narcotic pain medication. Becnel further contended that Ka-roline was exposed to second-hand smoke at her mother’s home, which was a danger to the child’s health. He ^requested immediate legal custody and averred that joint custody, with himself as the domiciliary parent, was in Karoline’s best interest.
The trial court ordered mediation proceedings and an interim judgment was rendered, ordering, among other things, that physical custody was to remain with Rooney pending further orders of the court and pending custody evaluations with Dr. Loretta Mbadugha. In a February 2003 Rule to Show Cause and Rule for Contempt filed by Rooney, it was alleged that Becnel failed to pay court-ordered child support and to visit with Karoline for over seven months. Rooney also urged that she desired to relocate to Alabama for employment purposes. Following a meeting in chambers in August with the parties and with Dr. Mbadugha, the trial judge awarded joint custody with Becnel as the domiciliary parent on August 22, 2003. The court, at that time, stated its determination was based on agreement of the parties and the recommendation of Dr. Mbadugha, although Dr. Mbadugha’s report is not in the record and does not appear to have been admitted into evidence. Further, it appears from testimony of both parties at the final custody hearing (see below) that the custody determination was made because Rooney had already moved out of state with Karoline *884 and without the permission of the court. Rooney was awarded certain visitation. Family therapy with Dr. Mbadugha was ordered for all parties, but the issue of child support was held in abeyance pending re-evaluation. In February 2004, pursuant to a status conference, the August 22, 2003 judgment was to remain in effect.
In November 2005, Rooney filed a Rule to Change Custody and Ex Parte Emergency Order for Drug Testing, alleging that Becnel had become dependent on drugs and had begun taking methadone. According to Rooney, Becnel’s behavior had become erratic, and Karoline was at risk. Rooney asked that Becnel be immediately subjected to drug testing. She further averred that Becnel had allowed |4Karoline to move with her to Virginia prior to Hurricane Katrina, and Karoline had lived with her for some months. After the hurricane, Becnel demanded Karoline be returned to him, but Becnel’s housing was inadequate. She finally alleged that Becnel had been unemployed for several years and could not provide for the child’s needs.
The record indicates that Dr. Mbadugha was no longer in the area after Hurricane Katrina. In December 2005, the court appointed Dr. Claudia Schott to perform evaluations for custody purposes, and, in January 2006, the trial court issued an interim order ordering mental health evaluations of the parties, requiring the parties to submit to random drug testing, and continuing the rule to change custody. In May 2006, Rooney filed Rules for Contempt, to Amend Interim Order, for Telephone Access to Minor Child, and for Visitation. Rooney alleged that Becnel failed to appear for random drug tests and was, thus, in contempt of court. She averred that Becnel denied her telephone access to the child. An interim order addressing visitation and drug testing was issued, but there was no change in custody.
In May 2007, Dr. Schott issued the court-ordered report regarding custody and visitation. Dr. Schott recommended joint legal custody with Rooney as the domiciliary custodian. At this point, Rooney was residing in the state of Virginia while Karoline resided in Louisiana with her father. In August 2007, the parties appeared before a domestic hearing officer, who recommended joint legal custody with Rooney being designated as the domiciliary parent and proposed that Becnel would have certain visitation rights. The recommendations were adopted as the interim judgment of the court. Becnel objected to the recommendations, and a hearing was held.
15At the hearing, Dr. Schott testified regarding her report, concluding that the most important thing in the case was that Karoline be domiciled with her mother, regardless of where Rooney relocated. She also recommended that Becnel have a psychiatric evaluation because she was concerned about his emotional and mental functioning and his ability to care for Ka-roline.
For her report, Dr. Schott interviewed the parties, as well as Dr. Mbadugha; S.M. (Rooney’s older daughter, who is not Becnel’s child); members of both Rooney and Becnel’s respective families; and various other collateral persons. She also reviewed numerous school records, medical records, documents, and evaluations. She narrated extensive histories of the contentious relationship between Rooney and Becnel, as well as detailed personal histories of each party. At the time of the report, Karoline was living with her father, and Rooney was residing in Virginia. Following a mental status evaluation and clinical testing, Dr. Schott found that Rooney' presented essentially normal. Although *885 Dr. Schott was concerned with the delinquency of S.M. and Rooney’s residency instabilities, she determined that Rooney was living a stable lifestyle, had a good job, and a more stable environment. Parenting classes were recommended.
According to the report, Becnel had a history of Major Depressive Disorder and Post-traumatic Stress Disorder following two automobile accidents. He was found to display affective instability and hypoma-nia. A psychiatric evaluation was recommended, along with parenting classes and individual therapy, “especially with regard to his hostility toward Rooney and the negative impact that this has on Karoline.” Dr. Schott was concerned with Becnel’s mood instability, impulsivity, social inappropriateness, and poor judgment, which interfere with his ability to meet Karoline’s emotional needs. Although Becnel was involved in the child’s education, clearly loved her, and had done his best for her, Dr. Schott was ^concerned with his extreme hostility toward Rooney and felt that this anger negatively affected his ability to foster the mother-daughter relationship. She concluded with her custody recommendation in favor of Rooney as the domiciliary parent. Dr. Schott also felt that Karoline perceived Becnel as himself requiring care.
Karen Hebert, Karoline’s preschool Head Start teacher in 2004, testified that, during the time the child was at school, and in Becnel’s custody, she often appeared dirty and her jacket had to be washed at school. At parent conferences, Becnel’s behavior was erratic, and Hebert refused to make a home visit because she was uncomfortable. Tonya Hoffman testified that Becnel was very involved in Karo-line’s kindergarten activities.
As a result of the hearing, a mental health expert was appointed to examine Becnel’s ability to care for Karoline. While the interim judgment remained in place, the permanent custody hearing was continued several times. Numerous pleadings and documents were filed by Becnel during this period, and visitation was addressed on a number of occasions. In September 2009, Becnel filed a Motion to Change Custody/Rule to Show Cause, alleging that Rooney was guilty of “gross neglect.”
The permanent custody matters were finally heard in March 2010, following which the court ruled that Rooney be granted permanent custody of Karoline. It is this judgment that is on appeal. Bec-nel generally asserts that Rooney did not carry her burden of proving by clear and convincing evidence that the permanent custody judgment is in the best interest of the child, citing Bergeron v. Bergeron.[1] He also urges that the court did not consider the factors enunciated in La. C.C. art. 134.
l7At the custody hearing, both parties appeared in proper person, as they do on appeal. Karoline was domiciled with her mother pursuant to the interim decree. Following a conference in chambers, the court decided to proceed with the final custody determination, although Becnel admitted that he had not had his psychiatric evaluation because “the doctor refused to see [him].” Rooney submitted the 2007 report of Dr. Schott as evidence and testified that she provided a safe home and stable environment. Becnel cross-examined her regarding visitation and telephone access to Karoline. He also questioned her about the child’s school progress. Rooney testified that Karoline’s reading level was below normal but that she is in a program to remedy that problem. Becnel also questioned Rooney about the legal and emotional problems of her older daughter, S.M., who is not Becnel’s child. *886 Becnel submitted a number of exhibits, including some documents regarding Karo-line’s grades; telephone records; and a 2005 traffic citation against Rooney for “child in front seat w/o belt.” He also testified briefly on his own behalf.
At the conclusion of the trial, the court adopted Dr. Schott’s report and awarded custody to Rooney with visitation to be worked out according to Dr. Schott’s recommendations.
In every custody case, the primary concern is the best interest of the child. Each case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the child.[2] In regard to child custody matters, Louisiana appellate courts have articulated a standard of review which holds that the trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court’s determination in a child custody case is entitled |8to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion.[3]
In the present case, the judgment of August 22, 2003 granting joint custody and naming Becnel as the domiciliary parent was not made pursuant to a hearing, but, rather, was a result of a meeting in chambers between the parties, Becnel’s attorney, and Dr. Mbadugha. In the transcript, the court stated that its order was made as a result of the agreement of the parties and the recommendation of Dr. Mbadugha, whose recommendation or report was not entered into evidence. The judgment merely states it would refer to Dr. Mbadugha’s plan in case of a “breakdown in communication” between the parties. Thus, it was a stipulated judgment, or “non-considered decree.” In cases where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in Bergeron is inapplicable.[4] Rather, a party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child.[5] In order to modify the prior arrangement, it was Rooney’s burden of proof to establish that a change of circumstances materially affecting the welfare of the child had occurred since the rendition of the August 22, 2003 judgment and, further, that the modification proposed by her was in the best interest of the child.
Factors that may be considered are set forth in La. C.C. art. 134, but the court is not bound to make a mechanical evaluation of each. Rather, a custody |adispute must be decided in light of its peculiar set of facts and the relationships involved in order to reach a decision that is in the best interest of the child.[6]
In this case, at the time of the 2010 hearing, and pursuant to the interim judgment rendered that year, Karoline had been living with her mother since 2007. This fact alone constitutes a materi *887 al change of circumstances since the prior decree. Further, the record discloses that Rooney carried her burden of proving that modification of the judgment was in Karo-line’s best interest. Although not detailed in this opinion, Dr. Schott’s evaluation, in particular as regards Becnel, was quite persuasive. The record is replete with evidence that Becnel’s mental and emotional state preclude him from being the proper custodial parent of this child. Although we realize that Becnel appeared at many instances in proper person and allow for this fact, the nature and content of his pleadings, as well as his cross-examination of Rooney, appear to amply support the diagnosis and recommendations of Dr. Schott. In this regard, we emphasize that Becnel did not obtain the psychiatric evaluation ordered by the court in 2007 and 2008.
In conclusion, we see no abuse of discretion in the judgment of the trial court in granting custody of Karoline to Rooney, with visitation for Becnel. The judgment is affirmed.

AFFIRMED

. 492 So.2d 1193, 1200 (La.1986).

. Schouest v. Schouest, 06-972 (La.App. 5 Cir. 5/29/07), 960 So.2d 285 (citing Zanco v. Zanco, 97-342 (La.App. 5 Cir. 11/12/97), 703 So.2d 745).

. Schouest, supra.

. Maxwell v. Stanley, 10-1049 (La.2/16/11), 57 So.3d 1193. Also, Silbernagel v. Silbemagel, 06-879 (La.App. 5 Cir. 4/11/07), 958 So.2d 13.

. Maxwell, supra.

. Earle v. Earle, 43,925 (La.App. 2 Cir. 12/3/08), 998 So.2d 828, writ denied, 09-0117 (La.2/13/09), 999 So.2d 1151; Richardson v. *887 Richardson, 07-0430 (La.App. 4 Cir. 12/28/07), 974 So.2d 761.