752 So.2d 402 (2000)
Pamela Jean Wilkinson POLEZCEK
v.
Timothy Ray POLEZCEK, Sr.
No. 99CA2076.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
Rehearing Denied March 30, 2000.
*403 A. Wayne Stewart, Livingston, for Pamela J. Hoover, Plaintiff-Appellant.
Robert A. Liptak, Walker, for Timothy Ray Polezcek, Sr., Defendant-Appellee.
Before: SHORTESS, C.J., PARRO and KUHN, JJ.
SHORTESS, C.J.
Pamela Jean Wilkinson Polezcek[1] sued Timothy Ray Polezcek for divorce in January 1996. Pamela was awarded temporary custody of the two minor children, Samantha, born in 1990, and Timothy, Jr. (T.J.), born in 1991. They were divorced in September 1996, and in August 1997, after a hearing, the trial court awarded the parties joint custody, with Pamela designated as the domiciliary parent. A judgment was signed September 4, 1997.
In October 1997 the court, on its own motion, issued an ex parte interim order naming Timothy as the domiciliary parent. Pamela then moved for sole custody. Timothy later moved to have the interim order made the judgment of the court. After a hearing, the trial court ordered that the parties continue to share custody and that Timothy continue as domiciliary parent. A judgment was signed May 17, 1999. Pamela appeals from this judgment.
The September 1997 judgment awarding custody to Pamela was a considered decree, i.e., an award of permanent custody in which the trial court received evidence of parental fitness to exercise care, custody, and control of their children.[2] The minutes and the judgment both reflect that a hearing was held and evidencethe report of the court-appointed expertwas received. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.[3]
The ex proprio motu, ex parte interim order awarding domiciliary-parent status to Timothy was not a considered decree. According to the language in that order, it was based on recommendations made to the court by Dr. Steven Thompson, a court-appointed expert. Those recommendations are not contained in the record, and Pamela was not given a chance to cross-examine Thompson. No reasons for the change were given by the trial court, and no proof was presented by Timothy that continuation of Pamela as domiciliary parent was deleterious to the children. If this interim order were the only custody decree in this case, the party seeking to change custody would need to prove only that the change was in the best interest of the child.[4]
The trial court did not give written reasons for its May 17, 1999 judgment. It is unclear from the trial court's oral reasons *404 what standard it applied. It issued this ruling:
[T]here will be joint custody between the parties with Mr. Polezcek being named as the domiciliary parent. The major reason for doing that is, that it's been going on now for a year and-a-half, and quite frankly, Mr. Polezcek has given me no, not enough testimony to show that a change is warranted. So, I'm not going to make that change.
The trial court appears to have placed the burden on Timothy to show that custody should be changed. The court found he had not presented enough evidence to change the court's interim decree. But why would Timothy ever present evidence to change the interim decree in his favor?
The trial court committed legal error in requiring Timothy to prove that the interim order should be changed, instead of determining whether a change from the considered decree would be deleterious to the children. In light of this legal error, we shall conduct a de novo review of the evidence.
The only witnesses who testified at the custody hearing were Timothy and Pamela. Timothy, who has primary custody under the interim order, testified Samantha and T.J., ages nine and seven at the time of the hearing, actually live with their paternal grandmother. He stated he lives "right behind mom." He gets home from work at 6:00 p.m. and spends time with the children from then until about 8:30 p.m. His mother picks the children up at school, and they sleep at her house because he has to get up at 4:00 a.m. to go to work. Samantha and T.J. share a bedroom in their grandmother's house.
Pamela lives in a 1998-model mobile home with three bedrooms and two baths. She stated the children have separate bedrooms in her home. She testified she does not work, which gives her more time to help the children with their homework after school and attend school events. Samantha has tested as gifted and makes straight A's in school, but T.J., who was in Timothy's custody during almost the entire school year had to repeat first grade.
Timothy contends, however, that the time Pamela spends with the children is not quality time because there are usually other children with them. As an example, he stated that when Pamela came to get the children to take them to church, there was another child in the car with them. Pamela has remarried, and she and her husband are trying to get custody of her husband's two young daughters. He complained that when his children visited their mother, their stepsisters were often there also.
Timothy was asked to give all the reasons why he thought Pamela should not have custody. He listed the following: 1) she was not responsible because she did not have a job; 2) she does not try to help him by buying things for the children (although he admitted he was over $2,000.00 behind in child support payments); 3) she did not return the children's basketball uniforms to him before a game; and 4) after visiting her mother, Samantha came home with her fingernails and toenails painted different colors.
These reasons do not qualify as conditions so deleterious to the children that the original considered decree should be modified. Furthermore, the evidence indicates it would be in the children's best interest to reside with their mother, rather than their paternal grandmother, who appears to be the de facto domiciliary "parent" in this case. At their mother's home they will have better living arrangements (separate bedrooms) and will be able to spend time with a parent, rather than a grandparent. The grandmother did not testify, and there is no evidence in the record of the grandmother's ability or inability to care for the children. We do know from the record, however, that Pamela has the time to spend with the children and to help *405 T.J. with his school work, which he apparently needs.
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered reinstating Pamela J. Hoover as domiciliary parent in accordance with all terms and conditions set forth in the considered decree rendered September 4, 1997. Costs of appeal are assessed to Timothy Ray Polezcek, Sr.
REVERSED AND RENDERED.
NOTES
[1] Pamela has remarried and now uses the name Pamela J. Hoover.
[2] Voelkel v. Voelkel, 97-2546, p. 3 (La.App. 1st Cir.5/15/98), 712 So.2d 633, 634-35.
[3] Evans v. Lungrin, 97-0541, pp. 12-13 (La.2/6/98), 708 So.2d 731, 738; Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986).
[4] Yelverton v. Yelverton, 621 So.2d 36, 40 (La. App. 2d Cir.1993).