822 So.2d 835 (2002)
David Joseph PIZZOLATO
v.
Angela Marie HIHAR.
No. 02-CA-53.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2002.
*836 Lila Molaison Samuel, Gretna, LA, for Appellant.
Gerard P. Archer, Tracy A. Glorioso, Metairie, LA, for Appellee.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
In this appeal, plaintiff, Angela Hihar, appeals the trial court's ruling that designated defendant, David Pizzolato, as the domiciliary parent of their minor child, A.P. For the following reasons, the judgment of the trial court is affirmed.
A.P. was born on May 29, 1997. Her parents, Angela Hihar, ("Hihar") and David Pizzolato, ("Pizzolato") were married on January 24, 1997 and thereafter separated on October 9, 1997. The parties were divorced by judgment dated May 11, 1998.
On March 11, 1998, Pizzolato filed a Petition for Custody, Visitation, and Child Support, requesting that he be named as the domiciliary parent, and that and he and Hihar share joint custody of A.P. pursuant to a submitted schedule.
On May 11, 1998, Hihar and Pizzolato entered a Consent Judgment into the record that provided for joint custody between the parties. Hihar was further designated as the primary physical custodian pending the outcome of a custody evaluation. Pending the results of the evaluation, Pizzolato was granted visitation with A.P. on alternating weekends.
On August 7, 1998, an Amended Judgment was submitted to the court that granted physical custody of A.P. to Pizzolato in order that child care could be provided to her every weekday. All provisions of the Consent Judgment previously entered into by the parties remained in full force and effect until March 10, 1999, when the parties entered into yet another superceding Consent Judgment.
On March 24, 2000, Pizzolato filed a Rule to Modify Judgment of Custody. As *837 grounds for his motion, Pizzolato gave his opinion that A.P. needed to begin her education in a pre-school, that he was able to provide a more stable environment than Hihar, and that it was in Ashley's best interest to have "an established home rather than continuously being bounced back and forth between the parties."
On April 12, 2000 the trial court heard the Rule to Modify Judgment of Custody and modified custody, on an interim basis, based upon psychological evaluations of the parties. By a judgment dated April 25, 2000, Pizzolato was named as the domiciliary parent, and the parties continued to share custody on alternating weeks with additional times of scheduled custody provided. On April, 27, 2000, Hihar filed a Motion For A New Trial, which the trial court granted.[1]
On August 15, 2000, Pizzolato filed a Motion for Emergency Restriction of Visitation Rights, Issuance of Temporary Restraining Order, and a Rule To Show Cause, based upon allegations that an acquaintance of Hihar's had sexually abused A.P. The court granted a Temporary Restraining Order against Hihar, pending Hihar's meeting with Dr. Scott Benton, a specialist in child abuse cases. An OCS investigation concluded that A.P. had not been sexually abused. On September 19, 2000, after a status conference between the parties and the court, the Temporary Restraining Order was vacated and the Interim Judgment of April 25, 2000 was reinstated.
On June 15, 2001, Pizzolato filed a Rule for Contempt, Rule to Modify Judgment of Custody, and Rule for Child Support, alleging that Hihar had violated the court's prior order by not allowing Ashley's paternal grandmother to provide day care for her, and by not having her fiancee complete an evaluation by Dr. William Janzen. Pizzolato further stated that he was able to furnish A.P. with a more stable environment than Hihar because he was married and had a permanent place of residence. After a hearing on August 8, 2001, the trial court named Pizzolato as the domiciliary parent, and ordered a visitation schedule for Hihar. It is from this judgment that Hihar appeals.

LAW AND ARGUMENT
We first address Hihar's second assignment of error in which she alleges that when domiciliary status was modified on April 12, 2000, there was no hearing to determine if there had been a material change in circumstances and therefore the trial judge should have required Pizzolato to prove a material change in circumstances on August 8, 2001.
It appears from the record that the delays for appealing the trial court's order of April 12, 2000, have long since expired. As previously noted, however, the record shows that the trial court granted Hihar's Motion For a New Trial related to the April 12, 2000 hearing, though a disposition of the matter is not provided. Assuming that the hearing on the Motion for a New Trial was never held, there is nothing for this court to review in regard to this assignment pending action by the trial court.[2] Nevertheless, Hihar's contention under this assignment regarding the change in circumstances requirement is addressed in her other assignments of error below.
Hihar asserts in her first, third, and fourth assignments that the trial court abused its discretion in naming Pizzolato the domiciliary parent and reducing the *838 amount of visitation Hihar could spend with her minor child.
In every custody case, the primary concern is the best interest of the child. Each case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the child.[3]
When the custody order is by consent of the parties, as in this case, and not a considered judgment made by the trial judge, the party seeking the change must show a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child.[4]
Having found that the decree in this matter is a consent decree, we must now decide whether Mr. Pizzolato has met the burden of proving a material change in circumstances since the entry of the original decree, and that the modification proposed is in the best interest of the child. In ruling on this issue, the trial judge has made credibility determinations and finding of facts, which this Court will not overturn absent an abuse of discretion.[5]
We first address the assertion that Pizzolato did not show a change in material circumstances at the August 8, 2001 hearing.
The record shows that court took note that Pizzolato had recently married and moved into a new home, while maintaining long term employment. Pizzolato's mother cared for the child on a daily basis while he and his wife were at work. The court further noted that A.P. would soon begin a five day a week pre-kindergarten program near Pizzolato's' home. As will be discussed more fully below, in regard to Hihar, the court noted that, at the time of the hearing, her present living conditions and lack of employment were not conducive to a stable environment that would be in A.P.'s best interest. The court further surmised that Hihar had previously disregarded its orders regarding the visitation of A.P. by Hihar's fiancee pending an investigation of alleged sexual abuse. Based on the foregoing, we find that the trial court did not abuse its discretion in determining that a material change in circumstances had occurred.
In her third assignment of error, Hihar asserts that the trial court did not evaluate several of the factors that are supposed to be considered in determining the child's best interest in accordance with Louisiana Civil Code Articles 131 and 134. Specifically, Hihar argues that the court primarily based its decision on what it called a "lack of stability" on her part.
La. C.C. art. 131 states that the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art 134 provides a number of factors for the court to consider in determining a child's best interest. These factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

*839 (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
In O'Brien v. O'Brien,[6] the court noted in regard to the above referenced factors:
The factors in La. C.C. Art. 134 are provided as a guide to the court in making the fundamental finding as to what disposition is in the best interest of the child. The list of factors is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. Because of the tribunal's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the court. McKinley v. McKinley, 25,365 (La.App. 2 Cir. 1/19/94) 631 So.2d 45; Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.1993).[7]
In this case, the trial court specified why it felt that it would be in the child's best interest to designate Mr. Pizzolato as the domiciliary parent:
The big issue here is, in my mind, is that lack of stability and the fact that you've (Hihar) changed your residence so much. And, also, because of all the issues in the past regarding Mr. Martin and I think there were some times when I felt like the court orders were not obeyed in connection with your relationship with Mr. Martinand I just think that this child is at a stage now where she's going to begin school, she needs to be in a stable environment where she can be, you know, living in one place, go to school and have stability, and not be living in a two bedroom condominium where five people normally reside and seven during the summer. I don't think that's a good environment for a child. She doesn't have a bedroom that she can call her own. She's sleeping with another person ...
Now, maybe when you become employed and, you know, you can stabilize your living arrangements, then you canI can, you know, re-evaluate it. But I think right now that child needs stability and some environment that is going to help establish her identity as an individual and boost her self esteem.
Based upon our review of the record, we find that, contrary to the assertions of Ms. Hihar, the court apparently took other *840 enumerated factors into account in designating Pizzolato as the domiciliary parent. While the court did, in fact, address what it perceived to be a temporary "lack of stability" on Hihar's part, it also appears that the court noted other points related to the child's best interest as well. The record shows that the court took into consideration the fact that at Hihar's present residence, A.P. was required to share a room with other people. We note in this regard that other courts have taken into account the factor of the physical living arrangements when determining the best interest of a child.[8] We do not find abuse of the court's discretion in determining that Pizzolato would be better suited to meet A.P.'s material needs at this time. Apparently, the court also gave weight to its conclusion that Hihar had disregarded its order not to allow her fiancee to have any contact with A.P.
In her final assignment of error, Hihar argues that the trial court abused its discretion when she decreased the equality of visitation rights that had previously been in effect to an amount of visitation that is less than half that amount without sufficient evidence to support such a finding.
LSA-R.S. 9:335 states in relevant part:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
The trial court, noting the crowded living condition, found that keeping A.P. with Hihar in her present living arrangement was not in A.P.'s best interest, instead designating Pizzolato the domiciliary parent, while ordering joint custody between the parties. Courts have held that when the court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody.[9] In light of our holding in regard to the previous assignments of error, and after a review of the judgment, we find no abuse of the trial court's discretion in the visitation schedule implemented in its September 17, 2001 order.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The outcome of this Motion is not apparent from the record.
[2] La. C.C.P. Art 2083.
[3] Zanco v. Zanco, 97-342 (La.App. 5 Cir. 11/12/97), 703 So.2d 745.
[4] Plaisance v. Dept. of Social Services, 00-1038 (La.App. 5 Cir 12/27/00), 777 So.2d 630.
[5] Rosell v. ESCO, 549 So.2d 840 (La.1989).
[6] 30,001 (La.App. 2 Cir. 12/10/97), 704 So.2d 933.
[7] Supra, at 935.
[8] Polezcek v. Polezcek, 992076 (La.App. 1 Cir. 2/18/00), 752 So.2d 402.
[9] O'Brien, supra.