WALTER J. ROTHSCHILD, Judge.
 

 | ¿The parties, Ellery and Wendy Bridges, were married on December 24, 1988. Two children, Jia and Jaden
 
 [1]
 
 
 *916
 
 Bridges, were born of this marriage. On August 10, 2007, Ellery filed a “Petition for Divorce under Article 102.” On January 23, 2009, Wendy filed an “Answer and Reconventional Demand,” in which she sought exclusive use and occupancy of the matrimonial domicile and joint custody of the parties’ children with her being designated as the domiciliary parent, as well as other incidental matters.
 

 These matters came before the trial court for hearing on February 10, 2009. At the conclusion of the hearing, the trial judge took the matter under advisement. On February 18, 2009, the trial judge rendered a judgment awarding use and occupancy of the matrimonial domicile to Wendy, pending further orders of the court. She further ordered that the parties have joint custody of the two children, with Wendy designated as the primary custodial parent and with Ellery to have physical custody every other weekend and for six weeks during the summer, as well as alternating holidays as set forth in the judgment.
 

 On February 26, 2009, Ellery filed a “Motion to Reconsider or Alternatively, Motion for New Trial,” arguing that Wendy had failed to meet her burden of Improving that a shared custody arrangement was not in the best interest of the children or that an equal sharing of time with the minor children was not feasible or in the best interest of the children. After a hearing on April 1, 2009, the trial judge denied the motion, stating that the main reason she did not order a shared or “50/50” custody arrangement was because Ellery’s work schedule includes shift work and Wendy would need to care for the children at times when Ellery is working. Ellery appeals.
 

 LAW AND DISCUSSION
 

 On appeal, Ellery asserts two assignments of error. In his first assignment of error, he contends that the trial court was manifestly erroneous in not ordering a shared custody arrangement between El-lery and Wendy Bridges. He argues that nothing in the testimony and evidence presented to the trial court indicated that it was not in the children’s best interest to order a shared custody arrangement. El-lery further asserts that the facts of this case clearly demonstrate that he has a right to equally share custody of the parties’ son, Jaden, on a 50/50 basis with Wendy.
 

 First, we note that the parties’ daughter, Jia, has reached the age of majority since the hearing in this matter. Accordingly, we address the custody issue solely as it pertains to the parties’ son, Jaden, who was born in 1996.
 

 At the hearing in this matter, Wendy Bridges testified that she was responsible for the daily care of Jaden, including waking him in the morning, bringing him to school,
 
 [2]
 
 making sure he is fed, and seeing to his everyday needs. She stated that Ellery did “not really” spend time with the children to the extent that he would be involved in their life on a daily-weekly basis. She also stated that she provided 90% of the discipline and management for the children’s behavior |4and took the children to doctor’s appointments, and that the children very seldom went on outings or did things with their father. She stated that Ellery attended only approximately two of the 30 to 40 softball games their daughter played in per season. Wendy also testified that there are about four parent-teacher conferences per year and she has attended four or five of them in
 
 *917
 
 the past five years, but Ellery has only attended one.
 

 Ellery Bridges testified that Wendy’s mother “pretty much raised our son” until she passed away. He testified that he went to some of Jia’s softball games and Jaden’s football games when he was not working, but he often did not know when games were scheduled because he was “the last one to get informed.” Ellery testified that he had not heard of any parent-teacher conferences this year, but he always went to them “when it was brought up to me” and didn’t conflict with his work schedule. He further testified that he works for Motiva Enterprises and that he works 12-hour rotating shifts, with built-in overtime, and that he works days and nights. He indicated that if he were granted shared custody of the children close to 50%, he would have to make arrangements with Wendy for the time periods when he would be working and the children would be at home.
 

 LSA-C.C. art. 132 provides that in the absence of an agreement between the parties, the trial court shall award custody to the parents jointly. Joint custody does not necessarily require an equal sharing of physical custody.
 
 Lee v. Lee,
 
 34,025, p. 9 (La.App. 2 Cir. 8/25/00), 766 So.2d 723, 728,
 
 writ denied,
 
 00-2680 (La.11/13/00), 774 So.2d 150;
 
 Martello v. Martello,
 
 06-594, p. 4 (La.App. 1 Cir. 3/23/07), 960 So.2d 186, 190-191;
 
 Pender v. Pender,
 
 38,649, p. 8 (La.App. 2 Cir. 5/12/04), 890 So.2d 1, 6;
 
 Voorhies v. Voorhies,
 
 96-342, p. 9 (La.App. 3 Cir. 10/9/96), 688 So.2d 1158, 1163. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children.
 
 McKenzie v. Cuccia,
 
 04-1112, p. 5 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 339;
 
 Stephenson v. Stephenson,
 
 37,323, p. 4 (La.App. 2 Cir. 5/14/03), 847 So.2d 175, 179. Only if it can be shown that a 50-50 shared physical custody arrangement is both feasible and in the best interest of the child, can such an order be implemented, and if both prongs are not met, then the court shall institute a custody arrangement that apportions enough time spent by the child with each parent to assure each parent of frequent and continuing contact with the minor child. LSA-R.S. 9:335(A)(2);
 
 Stephens v. Stephens,
 
 02-402, p. 4 (La.App. 1 Cir. 6/21/02), 822 So.2d 770, 774. So long as the child is assured of frequent and continuing contact with both parents, the primary goal of joint custody is met.
 
 Id.
 
 at 7, 822 So.2d at 777.
 

 In every custody case, the primary concern is the best interest of the child.
 
 Pizzolato v. Hihar,
 
 02-53, p. 5 (La.App. 5 Cir. 6/26/02), 822 So.2d 835, 838. LSA-C.C. art. 134 enumerates the following 12 nonexclusive factors that are relevant in determining the best interest of the child:
 

 1) The love, affection, and other emotional ties between each party and the child;
 

 2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child;
 

 3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs;
 

 4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment;
 

 5) The permanence, as a family unit, of the existing or proposed custodial home or homes;
 

 
 *918
 
 6) The moral fitness of each party, insofar as it affects the welfare of the child;
 

 7) The mental and physical health of each party;
 

 8) The home, school, and community history of the child;
 

 9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference;
 

 10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
 

 1611) The distance between the respective residences of the parties; and
 

 12) The responsibility for the care and rearing of the child previously exercised by each party.
 

 Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the children.
 
 Zanco v. Zanco,
 
 97-342, p. 11 (La.App. 5 Cir. 11/12/97), 703 So.2d 745, 750;
 
 Ellinwood v. Breaux,
 
 32,730, p. 2 (La.App. 2 Cir. 3/1/00), 753 So.2d 977, 979. On appellate review, the determination of the trial court in establishing custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion.
 
 Id.; Thompson v. Thompson,
 
 532 So.2d 101 (La.1988).
 

 At the April 1, 2009 hearing on Ellery’s “Motion to Reconsider or Alternatively, Motion for New Trial,” the trial judge stated the following with regard to her reasons for not ordering 50/50 shared custody in this case:
 

 I’m well aware of the law that joint custody, under the Revised Statute, the law urges you to give as close to 50/50 as is, as is reasonable and is possible. There were a number of concerns in this case with 50/50.
 

 First is Mr. Bridges works shift work, and, and I asked him who was going to take care of the kids when he was working shift work and make sure they were accounted for and everything, and he said, “Wendy.” And, and I’m sure that, that they worked well together with his shift work, and, and she’s the one that’s provided that kind of care.
 

 I, I don’t fault Mr. Bridges for his fathering. I think he’s a good father, but based on the evidence, not only that she presented, but that he presented, especially with his schedule and the fact that, that he also already depended on her for a lot, is, is the main reason that I think this is best. You’ll notice I changed it in the summertime so that it was, I believe, week to week, and I don’t know if I said alternating weeks or, you know, and they can work it out however they want to around his shift-work schedule or whatever. But my point in doing that was to bend over backwards to give him as much time as possible, because it’s a lot easier during the summer than during the school year, so that’s the reasoning.
 

 Based on the testimony in this matter, we find no abuse of discretion in the trial judge’s judgment ordering joint custody of Jaden, with Wendy designated as the primary custodial parent and with Ellery to have physical custody every other 17weekend and for six weeks during the summer, as well as alternating holidays as set forth in the judgment. As stated above, the primary goal of joint custody is met if the child is assured of frequent and continuing contact with both parents, and substantial time rather than strict equality of time is required under the legislative scheme for joint custody. The custody order in the present case provides for fre
 
 *919
 
 quent and continuing contact with both parents, and substantial time with Ellery. Accordingly, having found no abuse of the trial judge’s great discretion in establishing a custody arrangement, we find no merit in this assignment of error.
 

 In his second assignment of error, Ellery asserts that the trial judge erred in failing to award use of the family home to Ellery. He argues that Wendy had previously moved out and lived in a garage apartment at her father’s house, which she testified is still available to her, but he would be homeless if not awarded use and occupancy of the family home.
 

 LSA-R.S. 9:374(B) provides:
 

 When the family residence is community property or is owned by the spouses in indivisión, or the spouses own community movables or immovables, after or in conjunction with the filing of a petition for divorce or for separation of property in accordance with Civil Code Article 2374, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community movables or im-movables pending partition of the property or further order of the court, whichever occurs first. In these cases,
 
 the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community movables or im-movables to the spouse in accordance with the best interest of the family.
 
 If applicable, the court shall consider the granting of the occupancy of the family residence and the use of community movables or immovables in awarding spousal support.
 

 (Emphasis added.)
 

 Considering the testimony and evidence in this matter, particularly the evidence of the relative economic status of the spouses and the designation of Wendy as the primary custodial parent, we cannot say that the trial judge erred in | ¡¡concluding that awarding use and occupancy of the family home to Wendy was in the best interest of the family. Thus, we find that Ellery’s second assignment of error is without merit.
 

 DECREE
 

 For the foregoing reasons, we affirm the trial court’s February 18, 2009 judgment ordering joint custody, designating Wendy as the primary custodial parent, setting forth a reasonable visitation schedule, and awarding use and occupancy of the matrimonial domicile to Wendy.
 

 AFFIRMED.
 

 [1]
 

 . In the Petition for Divorce and Answer and Reconventional Demand, the parties' daughter’s name is spelled "Jia” and their son’s name is spelled "Jaden.” In Ellery's appeal brief and in other portions of the record, her name is spelled "Jai” and his name is spelled "Jaiden” or "Jayden.” For purposes of this
 
 *916
 
 opinion, we will spell her name as "Jia” and his name as "Jaden.”
 

 [2]
 

 . Wendy testified that she services the school that Jaden attends.