SUSAN M. CHEHARDY, Judge.
 

 12This appeal arises in a much-disputed child custody and visitation case. The father of the child appeals a judgment that denied his rule to change custody. We affirm.
 

 FACTS
 

 The parties, David Holland and Lisa Spellman, were never married to each other. They had a dating relationship that ended bitterly. Unknown to Holland, Spellman became pregnant as result of the relationship. The baby, a boy (“A.M.S.”),
 
 [1]
 
 
 *998
 
 was born on July 8, 2005. Holland learned of the birth shortly afterward, and sought to visit the baby. Spellman allowed him to see the baby twice in August 2005.
 

 Hurricane Katrina struck at the end of August 2005 and both parties evacuated the New Orleans area. Holland ended up in Lafayette, Louisiana, and Spellman ended up in Fort Walton Beach, Florida. Holland attempted to re-establish contact so he could visit the baby, but Spellman refused to allow him contact with the child and refused to accept child support from Holland.
 

 In December 2005 Holland initiated this action as a filiation suit to establish his paternity of A.M.S. Spellman resisted, but in due course Holland’s paternity |swas proven. Eventually the court ordered Spellman to return with the child to Louisiana.
 

 Holland sought custody and visitation, resulting in a December 2006 consent judgment under which the parties received joint custody of the child, with Spellman being designated as domiciliary custodian. The judgment provided for a parenting facilitator to assist the parties in developing a co-parenting relationship.
 

 In February 2009, Holland filed a rule to set a physical custody schedule, requesting additional times for physical custody. In March 2009, a domestic hearing officer issued Stipulations and/or Recommendations, in which he recommended that Holland be given increased visitation and that Holland and Spellman participate in court-ordered facilitation with Dr. Karen Van Beyer. In April 2009 the district judge awarded Holland increased physical custody and ordered the parties to participate in facilitation with Dr. Van Beyer, pursuant to the hearing officer’s recommendation.
 

 In May 2009 Holland filed a rule for contempt against Spellman, stating he had repeatedly requested facilitation as required by the April 2009 order, but Spell-man had refused to schedule an appointment with Dr. Van Beyer. Spellman failed to appear for the scheduled hearing. As a result the hearing officer issued Stipulations and/or Recommendations in June 2009, in which he recommended that Spell-man be found in contempt and that she be required to pay Holland’s attorney’s fees. On August 4, 2009, the district court found Spellman in contempt, ordered her to schedule an appointment with Dr. Van Beyer within 15 days, and awarded Holland attorney’s fees.
 

 On October 23, 2009, Spellman filed a petition for protection from abuse, alleging that Holland had sexually abused A.M.S. The court issued a temporary restraining order that day. Three days later Holland filed a motion for an ex parte |4order of custody and for the child to be examined at Children’s Hospital. He also filed a rule to change custody and for child support, and a rule for contempt for failure to allow visitation.
 

 After a hearing on November 5, 2009, the court dismissed the protective temporary restraining order. On the same day the court appointed Dr. Van Beyer as mental health expert, ordering both parties to contact Dr. Van Beyer for an appointment. In a judgment signed on November 17, 2009, the court ordered that Holland have the same schedule of visitation as before, but under supervision by his parents pending further proceedings.
 

 On November 25, 2009, Holland filed another rule for contempt against Spell-man because she had not complied with the order to contact Dr. Van Beyer. Holland also filed a motion for issuance of a civil warrant, alleging that Spellman had wrongfully withheld A.M.S. from Holland when he sought to pick up the child for visitation. The warrant directed law enforcement authorities to compel Spellman
 
 *999
 
 to release the child to Holland for scheduled visitation. The warrant was issued that day. Accompanied by police officers, Holland was able to pick up the child.
 

 On December 15, 2009 the court again found Spellman in contempt and sentenced her to a suspended term of 30 days in parish prison, plus a fine of $500, and ordered her to pay $1,000 in attorney’s fees to Holland’s attorney.
 

 On February 19, 2010, Dr. Van Beyer filed the custody evaluation with the court. After a hearing on May 25, 2010, the hearing officer issued Stipulations and/or Recommendations adopting the recommendations in Dr. Van Beyer’s custody evaluation report, and awarding Holland increased visitation. Holland objected to the hearing officer’s recommendations and requested a hearing before the district judge.
 

 | fiFollowing a hearing on June 16, 2010, on July 6, 2010 the district judge issued an order that denied Holland’s request to become domiciliary custodian, but only on the condition that Spellman stop suggesting to A.M.S. that. Holland was an abuser or unfit parent, that Spellman participate in weekly psychotherapy sessions for a minimum of one year, and that Spellman make arrangements to start her psychotherapy within 15 days.
 

 On July 13, 2010 Holland filed a motion for new trial, asserting that Spellman had failed to meet any of the conditions of the July 6, 2010 order. The motion for new trial was heard on August 16, 2010, after which the court denied Holland’s motion and issued an order directing Spellman to contact the Jefferson Parish Human Services Authority and Dr. Van Beyer to determine what services were available to her for mental health treatment.
 

 A review hearing was held on September 20, 2010, which established that Spell-man had not yet fully complied with the court’s order. The court did not modify custody, however, despite the statement in the July 6, 2010 judgment. On September 20, 2010, Holland filed an appeal of the July judgment.
 

 The evidence at the hearings establishes that Spellman has consistently refused to communicate or cooperate with Holland, has twice filed petitions for protection from abuse against him that were dismissed for lack of evidence, and has failed repeatedly to comply with the court orders that regulate the terms of the joint custody arrangement. Spellman failed or refused to cooperate with the court’s orders concerning meeting with the parenting facilitator. When Holland pressed Spellman to agree to let him have A.M.S. for overnight visits, she argued with him and subsequently refused to have direct communication with him.
 

 For several months thereafter they communicated through writing in a notebook that went back and forth with the child on his visits with his father. 1 fiHolland desired to discuss with Spellman the child’s developmental milestones, but she refused. They communicated exclusively through Spellman’s mother.
 

 Spellman testified she refused to talk to Holland because any time they tried to talk it became ugly, disrespectful and humiliating. She gave no specifics as to what occurred, however. Spellman stated she initiated the use of the notebook, but they eventually stopped using it after A.M.S. became able to speak for himself.
 

 Dr. Van Beyer, who had been appointed to be the parties’ parenting facilitator in May 2008, testified that shortly after the court appointment Holland contacted her and sent her a check for her services. Dr. Van Beyer said she contacted Spellman to arrange a time for a meeting, but Spell-man was not willing to meet with Dr. Van Beyer if Holland was there.
 

 
 *1000
 
 Spellman ignored an April 2009 order that she attend facilitation and in July 2009 was held in contempt for failing to obey that order — more than a year after she was first directed to participate in facilitation with Dr. Van Beyer. The contempt order further directed Spellman to schedule an appointment with Dr. Van Beyer within 15 days. Dr. Van Beyer testified that Spellman did appear for an appointment shortly after July 28, 2009, but she refused to attend a meeting with Holland because she did not want to be in the same room with him.
 

 Dr. Van Beyer stated she was unable to persuade Spellman to change her mind. In her individual meeting with Dr. Van Beyer, Spellman said she had already given in to what Holland wanted, and so there were no more issues for her to discuss with him. Based on that, Dr. Van Beyer decided the case could not be facilitated and she resigned as facilitator. She suggested to the court that a full custody evaluation be undertaken.
 

 In a letter dated September 22, 2009, Dr. Van Beyer reported that Holland felt that Spellman was mentally unstable, and he was concerned about her lack of [ 7communication with him, the child’s failure to be potty-trained at the age of four, that the child was still using a bottle, and the fact that the child was not interacting with other children under Spellman’s eai’e. Holland told Dr. Van Beyer he was concerned it would be detrimental to the child’s well-being to remain in Spellman’s care.
 

 Dr. Van Beyer verified that Holland was unable to communicate with Spellman and she indicated she shared Holland’s concerns about Spellman’s mental instability.
 

 Shortly after Dr. Van Beyer’s letter was sent to the parties, Spellman accused Holland of sexually abusing A.M.S. during visitation on October 4, 2009. She called the police and said that A.M.S. told her they had “played the bathtub games,” “where we washed all of the parts.” Police came by and made a report, but took no action. On October 9, 2009, Spellman again accused Holland of abuse when A.M.S. told her as he took a bath that “my daddy plays with me.” When Spellman asked what that meant, the child replied, “Nothing.” Spellman claimed further abuse after the October 18, 2009 visit, alleging that A.M.S. told her that his father “is putting toys in my booty.”
 

 On October 23, 2009, Spellman filed a petition for protection from abuse based on that incident, which resulted in Holland’s having visitation only with supervision. Holland’s motion to have A.M.S. examined at a hospital was granted, but the examination revealed nothing to indicate the child had been abused. The Office of Community Services investigated, and on April 21, 2010, issued a letter finding the allegations of sexual abuse were invalid.
 

 Following the November 5, 2009 court order, Dr. Van Beyer and Dr. Jeremy Handy conducted a mental health evaluation. Dr. Van Beyer testified that Spell-man failed to answer the questions on the parent and child questionnaire 18administered by Dr. Van Beyer as part of the evaluation, but that Holland complied fully.
 

 Dr. Van Beyer reported that A.M.S. told Holland that his mother would be “sad” to see him after a visit with Holland “because I have to tell her you put something in my booty,” although A.M.S. knew it was not true. A.M.S. also stated that Spellman wanted him to tell the story to her and to the police. Dr. Van Beyer testified that when Spellman would tell A.M.S. to say bad things about his own father, when he knew they were not true, it had to be terribly confusing, destructive, and harmful to him.
 

 
 *1001
 
 Dr. Van Beyer testified that Spellman’s insight and judgment are questionable. She further stated that Spellman does not have clear-cut symptoms of one of the disorders in the Diagnostic and Statistical Manual, but she evidenced symptoms of a persistent type of post-traumatic stress disorder, resulting in a mental condition for which she needs treatment. Dr. Van Beyer testified that Spellman is delusional about the topic of sexual abuse, and concluded that Spellman was incorrect about what has happened to her son, and that she needs help.
 

 Dr. Van Beyer also noted that Spell-man’s mother, who had functioned as liaison between Spellman and Holland prior to the abuse allegations, now believed that Holland was a sexual abuser, which had a negative impact on the nature of the communication between Holland and Spellman. Dr. Van Beyer testified further she believed that although he was almost five years old, A.M.S. had almost no interaction with other children.
 

 Spellman testified she planned on sending A.M.S. to kindergarten, but admitted at the June 16, 2010 hearing she had not yet made any arrangements to register the child for a school, although classes were to start in mid-August. |3Spellman also admitted that she had not gathered any information about schools, but instead she was relying on her mother to do that.
 

 Dr. Van Beyer recommended to the court that Spellman remain domiciliary custodian only if she met certain conditions. These included attending psychotherapy with an experienced mental health professional on a weekly basis for a minimum of one year, cessation of all accusations against Holland regarding abuse or misconduct in the presence of A.M.S., and cessation of her questioning A.M.S. every time he returned to her from visitation with his father. Dr. Van Beyer emphasized that if Spellman failed to get mental health assistance, then Holland should become domiciliary custodian.
 

 Spellman indicated in her trial testimony that she did not have enough money to pay for therapy. She acknowledged, however, that she had never cashed the child support checks Holland had been giving her. Spellman acknowledged receipt of the May 25, 2010 finding of the hearing officer, which stated she must obtain psychotherapy, but she did nothing and decided instead to wait for the district judge to issue an order. Spellman also admitted that although she is a trained pharmacist, she had not worked since 2004, and she did not want to return to work as a pharmacist because “[fit’s not in my heart to really be a pharmacist again.”
 

 After, the trial the court adopted Dr. Van Beyer’s recommendations as follows. The parties were ordered to remain joint custodians of A.M.S.; Spellman was to remain as domiciliary custodian only if she met the following conditions: (a) she was not to unduly influence A.M.S. to inappropriately see his father as an abuser or otherwise unfit father; (b) she was to participate in psychotherapy with an experienced mental health professional on a weekly basis for a minimum of one year; (c) she was to immediately make arrangements to see a therapist and to notify 11ftthe court within 15 days — on or before July 1, 2010 — of the name of the therapist; and (d) she was to require the therapist to submit a report to the court on a monthly basis as to Spellman’s attendance at the weekly therapy sessions.
 

 The court further ordered Spellman to set aside her animosity toward Holland and to communicate directly with him, and to stop questioning A.M.S. about possible abuse. In response to questions by Holland’s counsel as to how it would be known if Spellman was actually going to therapy, the court responded, “because she’s going
 
 *1002
 
 to report to me that she’s doing it.” The court set “the end of the week” as the time limit for Spellman to arrange psychotherapy-
 

 The court also informed Spellman that if she did not communicate with Holland to enable his being a joint parent, then the court would make the change. The court set up a time frame of 15 days for Spell-man to inform the court of the name of her therapist and to make arrangements to see the therapist.
 

 At the hearing on Holland’s motion for new trial, however, on August 16, 2010— two months after the time when the court had ordered her therapy was to begin— Spellman admitted she had not started therapy, because she had not found a therapist. She stated she had called four different organizations, but was told she did not qualify for free treatment. She admitted she had not called Dr. Van Beyer as the court had directed in June. Spellman also acknowledged she still had not cashed any of the child support checks from Holland; she had not used the checks to pay for A.M.S.’s school tuition, but instead had taken out a loan.
 

 Holland testified that for over a month after the June 2010 trial, A.M.S. complained to him that Spellman asked about abuse every time he went home.
 

 Spellman stated she had declined an offer of counseling sessions with a student from Xavier University because the court required her to have a licensed medical professional. In response the court pointed out that the judgment stated |1t“an experienced mental health professional,” and did not require licensing. On being asked by the court why she had not reported back to the court after 15 days, Spellman simply stated she had not contacted the court because she did not have a name of a counselor.
 

 Although the court indicated frustration with Spellman’s failure to follow the prior orders, the court did not adhere to its June 16, 2010 ruling that it would designate Holland domiciliary parent if Spellman failed to follow the conditions set out in the judgment. Instead, the court gave Spell-man another opportunity to get a therapist within a week and scheduled another hearing for a month later.
 

 At that review hearing on September 20, 2010, Spellman reported she still had not obtained a therapist. She had called the Jefferson Parish Mental Health Clinic on August 17, but was unable to arrange for a therapist because that clinic no longer does individual counseling. Spellman also testified she had phone Dr. Van Beyer twice, on August 19 and 20, but did not receive a return call. She admitted she never tried again. Spellman stated Dr. Van Beyer left a message on Spellman’s mother’s cell phone on September 2, indicating she had names of two therapists to recommend, but Spellman never followed up on that call.
 

 Spellman said she did nothing because she believed the court would make a decision about whom she should get as a therapist. Spellman admitted she made no efforts to contact the persons whom Dr. Van Beyer recommended.
 

 The judge chastised Spellman, telling her he expected her to be in treatment by that day, and warning her of adverse consequences if she failed to comply. Nevertheless, the court did not designate Holland the domiciliary parent but instead gave Spellman another opportunity to begin therapy.
 

 |12On appeal, Holland asserts the trial court abused its discretion in denying his rule to change custody and in allowing Spellman to repeatedly disregard and flout the orders of the court.
 

 
 *1003
 
 LAW AND ANALYSIS
 

 The court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. “In the absence of agreement, ... the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.” La. C.C. art. 132. Where there is joint custody, “to the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.” La. R.S. 9:335(A)(2)(b).
 

 In seeking to modify a consent judgment, the moving party must show that a material change in circumstances has occurred since the entry of the consent judgment, and that the proposed modification is in the best interest of the child.
 
 Pizzolato v. Hihar,
 
 02-53, p. 5 (La.App. 5 Cir. 6/26/02), 822 So.2d 835, 838. In ruling on this issue, the trial judge makes credibility determinations and findings of fact, which this Court will not overturn absent an abuse of discretion.
 
 Id.
 

 To evaluate whether a modification of custody is in the child’s best interests, the court must be guided by La. C.C. art. 134:
 

 The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
 

 (1) The love, affection, and other emotional ties between each party and the child.
 

 (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
 

 |1S(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
 

 (4)The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
 

 (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
 

 (6) The moral fitness of each party, insofar as it affects the welfare of the child.
 

 (7) The mental and physical health of each party.
 

 (8) The home, school, and community history of the child.
 

 (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
 

 (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
 

 (11) The distance between the respective residences of the parties.
 

 (12) The responsibility for the care and rearing of the child previously exercised by each party.
 

 The weight to be given each factor is left to the discretion of the trial judge.
 
 Pizzolato, supra.
 

 A reviewing court may reverse a trial court determination with regard to the best interests of the child only if there is a clear showing of abuse of discretion.
 
 Estes v. Estes,
 
 261 La. 20, 258 So.2d 857, 859 (1972).
 

 Holland argues that since the consent ruling of December 2006, several material changes in circumstances have occurred: (1) Spellman’s refusal to communicate directly with Holland in facilitation and her insistence on using her mother as an intermediary for ordinary communication with Holland; (2) |uSpellman’s unproven accusation of sexual abuse against Holland, which came directly after Dr. Van Beyer recommended more visitation time for Hoi-
 
 *1004
 
 land; (3) Spellman’s persistent questioning of A.M.S. about abuse every time he returned from visitation with his father; (4) Spellman’s apparently deteriorating mental condition; (5) Spellman’s reluctance to have the child socialize with other children on a regular basis; (6) Spellman’s delay in making timely arrangements for A.M.S. to attend school; and (7) Spellman’s failure to share information and decision-making with Holland as the child grew older.
 

 Notwithstanding the court’s repeated admonitions and orders, Spellman continued to delay and avoid obtaining therapy. Her behavior persisted despite the court’s repeated attempts to explain and define the scope of the rulings over successive hearings.
 

 Despite Holland’s understandable concerns, we do not find that these occurrences satisfy the requirement of material changes in circumstances such as to establish that the trial court abused its discretion.
 

 Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the children.
 
 Bridges v. Bridges,
 
 09-742, p. 6 (La.App. 5 Cir. 2/9/10), 33 So.3d 914, 918. On appellate review, the determination of the trial court in establishing custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion.
 
 Thompson v. Thompson,
 
 532 So.2d 101, 101 (La.1988).
 

 The transcript of the hearing shows the trial court was deeply concerned with the matter and paid close attention to the issues and problems in the case. The testimony also established that the child currently is a “happy, normal little boy,” living in a warm, stable, and loving environment with his mother at his 11sgrandmother’s home (described by Dr. Van Beyer as the child’s “secure base”). The child is comfortable in his father’s environment also, and he enjoys the time he spends with his father.
 

 Considering the record as a whole, we are unable to find that the trial court abused its discretion in denying the father’s rule to change custody.
 
 [2]
 

 DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED
 

 [1]
 

 . We designate the child by initials to protect his privacy.
 
 See
 
 La. S.Ct. Rules, Rule XXXII, section 3.
 

 [2]
 

 . Dr. Van Beyer recommended the parents be given 50-50 shared custody, but the trial judge did not follow that recommendation. Although we consider that recommendation very persuasive, we are unable to find the judge’s rejection of 50-50 shared custody a clear abuse of the trial court's great discretion.